UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                          :
NEWARK BETH ISRAEL,                       :
                                          :        **(CLOSED)**
          Petitioner,                     :
                                          :    CIVIL ACTION NO. 03-2922 (JCL)
     v.                                   :
                                          :    **OPINION**
NORTHERN NEW JERSEY                       :
TEAMSTERS BENEFIT PLAN,                   :
                                          :
          Respondent.                     :
_____          :
                                          :
ST. BARNABAS MEDICAL                      :
CENTER,                                   :
                                          :        **(CLOSED)**
          Petitioner,                     :
                                          :    CIVIL ACTION NO. 05-5309
     v.                                   :
                                          :
TEAMSTERS HEALTH AND                      :
BENEFIT FUND,                             :
                                          :
          Respondent.                     :
_____          :

```
                                              :
_____         :
                                    :
BAYONNE MEDICAL CENTER              :
                                    :         (CLOSED)
              Petitioner,           :
                                    :         CIVIL ACTION NO. 05-5737
     v.                             :
                                    :
NORTHERN NEW JERSEY                 :
TEAMSTERS BENEFIT PLAN,             :
                                    :
              Respondent.           :
_____         :
                                    :
CHRIST HOSPITAL                     :
                                    :         (CLOSED)
              Petitioner,           :
                                    :         CIVIL ACTION NO. 05-5742
     v.                             :
                                    :
NORTHERN NJ TEAMSTERS               :
                                    :
              Respondent.           :
_____         :
```

## LIFLAND, District Judge

Before the Court is a motion by Newark Beth Israel ("Plaintiff" or "Hospital") to reopen the case and remand it to state court pursuant to 28 U.S.C. § 1447(c). Defendant, Northern NJ Teamsters Benefit Plan ("Defendant" or the "Plan"), removed the action to this Court, and now opposes a remand. The dispositive issue in this case is whether this Court has subject matter jurisdiction over Plaintiff's

2

claims.  To answer this question, the Court must interpret the language of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a), in light of the "well-pleaded complaint" rule and the corollary complete preemption exception.  Although Plaintiff's complaint asserts only state breach of contract claims, Defendant argues that this Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331 because ERISA completely preempts the asserted state law claims.[1] As discussed below, while ERISA may, or may not, provide Defendant a preemption defense, it does not completely preempt state law, and therefore does not create federal question jurisdiction over this case.  Accordingly, this Court lacks subject matter jurisdiction, and the case will be remanded to state court.

## I.   BACKGROUND

The Plan is an "employee welfare benefit plan" as defined by ERISA, 29 U.S.C. § 1002(1).[2]  At all times relevant to this action, Plan participants were eligible for hospitalization coverage through the MagNet, Inc. ("MagNet") network of

_____

[1] This Opinion and Order disposes of the issue with respect to three other cases as well.  See infra note 4.

[2] "[T]he term 'Plan' refers not only to the defendant in the underlying lawsuit . . . but also to the underlying 'rules governing collection of premiums, definition of benefits, submission of claims, and resolution of disagreements over entitlement to services' that make up an employee welfare plan."  Pascack Valley Hosp., Inc. v. Local 464A UFCW Welfare Reimbursement Plan, 388 F.3d 393, 396 n.1 (3d Cir. 2004) (quoting Pegram v. Herdrich, 530 U.S. 211, 223 (2000)).

hospitals.  MagNet, an independent consultant, "has organized a network of hospitals that have agreed to accept discounted payment for medical services provided to beneficiaries of group health plans [including the NNJ Plan] in return for the plans' promise to encourage beneficiaries to use network hospitals." Pascack Valley Hosp., Inc. v. Local 464A UFCW Welfare Reimbursement Plan, 388 F.3d 393, 396 (3d Cir. 2004).

The benefits available to Plan participants, and the terms and conditions governing the provision of those benefits, are set forth in a summary plan description ("SPD"), which instructs Plan participants to provide their Plan identification cards to MagNet hospitals when receiving treatment.  The hospital then submits a claim directly to the Plan, and the Plan, in turn, evaluates whether the claim is payable.  If the claim is payable and the hospital has properly represented that it was the assignee of the patient/participant, the Plan remits payment directly to the hospital.

It is important to emphasize that, despite this direct payment system, "[n]etwork hospitals do not contract directly with the plans.  Instead, MagNet enters into separate contracts with individual plans, and separate contracts with individual hospitals." Id.  Here, for example, MagNet entered into a "Subscriber Agreement" with the Plan and a separate contract with Newark Beth Israel.  The Subscriber Agreement between MagNet and the Plan provides in relevant part that the

4

discounted rate offered by the Hospital will be forfeited unless claims are timely paid:

> Subscriber [here, the Plan] or its authorized agent shall pay Network Hospitals for Covered Services furnished to Eligible Persons.

> Pursuant to a valid assignment from Eligible Person, [the Plan] . . . shall directly pay Network Hospitals for Covered Services provided to Eligible Persons within thirty (30) days after date of receipt of submitted Clean Claims . . . .

> For other non-clean claims, payment shall be made within thirty (30) days of receipt of all records and other information necessary for proper claims adjudication.

> . . . .

> If [the Plan] fails to pay within the appropriate time frame, the [Plan] acknowledges that it will lose the benefit of the MagNet discounted reimbursement rate and that Network Hospital is then entitled to bill and collect from [the Plan] and Eligible Person its customary rate for services rendered. If [the Plan] fails to make the payment, the Network Hospital may pursue any remedies available against [the Plan] and Eligible Person.

Rafek Wassef, Josef Menyhart, and Walter Paz are participants in the Plan who received medical treatment from Newark Beth Israel between February and October of 1999.  The total for services rendered to these three patients was $42,841.10.  The Plan remitted payment in the amount of $4,560.  Presumably, this figure reflects the agreed-upon discounted rate.

In January 2003, the Hospital filed a complaint in the Superior Court of New Jersey alleging that the Plan breached its contract by failing to remit payments for the

5

three patients within the contractually prescribed time period, and accordingly, forfeited the right to pay a discounted rate.[3]  The complaint seeks $38, 281.10 in damages—the difference between the discounted amount paid by the Plan, and the total amount charged for the medical services.

In June 2003, the Plan removed this action pursuant to 28 U.S.C. §§ 1441(a) and 1331.  On December 31, 2003, this Court filed an order "administratively terminating [the case] pending the results of any appeal in the similar cases captioned Pascack Valley Hospital v. Local 464A Welfare Fund, Civil Action No. 02-5974 (DMC) and Community Medical Center v. Local 464A Welfare Fund, Civil Action No. 03-2658 (SRC)," both of which had been recently dismissed by other judges of the United States District Court for the District of New Jersey.[4]  On November 1, 2004, the United States Court of Appeals for the Third Circuit issued a precedential opinion reversing the District Court's decision in Pascack.  See Pascack Valley Hosp., Inc. v. Local 464A UFCW Welfare Reimbursement Plan, 388 F.3d 393, 396 (3d Cir. 2004).  On July 29, 2005, the Third Circuit reversed the

---

[3] Because there is no direct contract between the Hospital and the Plan, the complaint alleges that the Hospital is a third-party beneficiary to the Subscriber Agreement between MagNet and the Plan.

[4] Pascack and Community Medical were factually similar to the instant case, and raised virtually identical legal issues.

District Court's decision in Community Medical.  See Community Medical Center v. Local 464A UFCW Welfare Reimbursement Plan, 143 Fed.Appx. 433 (3d Cir. 2005) (not-precedential opinion).  As a result of these decisions, the Hospital filed the instant motion to reopen and remand.[5]

The Plan does not oppose reopening of the case.  Given the Third Circuit decisions in Pascack and Community Medical, and the terms of the administrative termination of the case, the Plaintiff's motion to reopen will be granted.  The Court turns now to the more complicated question of whether the case should be remanded to the state court.

## II.    STANDARD OF REVIEW

An action filed in state court may be removed to a federal court if the case

---

[5] On March 23, 2006, the Court granted an unopposed motion to consolidate this case with St. Barnabas Medical Center v. Teamsters Health and Benefit Fund, Civil Action No. 03-3187 (WJM); Saint Barnabas Medical Center v. Teamsters Health and Benefit Fund, Civil Action No. 05-5309 (DMC);  Bayonne Medical Center v. Northern NJ Teamsters Benefit Plan, Civil Action No. 05-5737 (HAA); and Christ Hospital v. Northern NJ Teamsters, Civil Action No. 05-5742 (WJM). It appears that Magistrate Judge Hedges has already ruled on the motion to remand in St. Barnabas Medical Center v. Teamsters Health and Benefit Fund, Civil Action No. 03-3187 (WJM).  Accordingly, the Order and Opinion in this case will constitute the law of the case for all of these actions except No. 03-3187.  See Order Consolidating Cases (Mar. 23, 2006).  Cathedral Healthcare System - St. Michael Medical Center v. Northern NJ Teamsters Benefit Plan, Civil Action No. 05-5305 (FSH) was also consolidated with this case, but has since been voluntarily dismissed.

could have originally been brought in that federal forum. 28 U.S.C. § 1441(a);

1446(a); City of Chicago v. Int'l College of Surgeons, 522 U.S. 156, 163 (1997).

Any action removed to federal court shall be remanded to the state court, if "at any

time before final judgment it appears that the district court lacks subject matter

jurisdiction." 28 U.S.C. § 1447(c). The facts supporting jurisdiction are evaluated

"according to the plaintiff's pleading at the time of the petition for removal," and the

removing party carries the burden of establishing federal subject matter jurisdiction.

Int'l College of Surgeons, 522 U.S. at 163; Dukes v. U.S. Healthcare, Inc., 57 F.3d

350, 359 (3d Cir. 1995); Abels v. State Farm Fire & Cas. Co., 770 F.2d 26, 29 (3d

Cir. 1985). The limited scope of federal jurisdiction demands that the removal

statutes be strictly construed. Boyer v. Snap-on Tools Corp., 913 F.2d 108, 111 (3d

Cir. 1990). All doubts concerning removal jurisdiction should therefore "be resolved

in favor of remand." Brown v. Francis, 75 F.3d 860, 864-65 (3d Cir. 1996); Steel

Valley Auth. v. Union Switch & Signal Div., 809 F.2d 1006, 1010 (3d Cir. 1987).

## III.   ANALYSIS

For a case to be properly removed on the basis of a federal question, it must

contain a claim that "arises under the Constitution, treaties, or laws of the United

States." 28 U.S.C. § 1331, 1441(b); Dukes, 57 F.3d at 353. To "arise[] under federal

law," the federal question must appear on the face of the plaintiff's "well-pleaded

complaint." Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 9-10 (1983); Dukes, 57 F.3d at 353.  The "well-pleaded complaint rule" recognizes that the plaintiff is the "master of the complaint," and may choose to assert only state law claims, despite the availability of federal remedies. Caterpillar Inc. v. Williams, 482 U.S. 386, 398-99 (1987); United Jersey Banks v. Parell, 783 F.2d 360, 365 (3d Cir. 1986) (citations omitted).   Under the "well-pleaded complaint rule," federal jurisdiction cannot be created by anticipating a federal defense to the plaintiff's state law claims.  Gully v. First Nat'l Bank, 299 U.S. 109, 115-18 (1936); Caterpillar, 482 U.S. at 398-99.  Therefore, a defendant may not ordinarily remove a case by asserting a defense based on federal law, for example, that the plaintiff's cause of action is preempted by federal law.  Caterpillar, 482 U.S. 386 at 398; Railway Labor Execs. Assoc. v. Pittsburgh & Lake Erie R.R. Co., 858 F.2d 936, 939 (3d Cir. 1988).

Although a mere defense based on federal preemption is insufficient to confer federal jurisdiction, the doctrine of *complete preemption* is "a corollary or an exception to the 'well-pleaded complaint' rule." Wood v. Prudential Ins. Co. of Am., 207 F.3d 674, 678 (3d Cir. 2000) (citing Metropolitan Life v. Taylor, 481 U.S. 58, 63-64 (1987)).  The complete preemption doctrine holds that "Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." Metropolitan Life, 481 U.S. at 63-64.

9

Where complete federal preemption exists, removal is proper despite the absence of a federal cause of action on the face of the complaint.  <u>Rivet v. Regions Bank of L.A.</u>, 522 U.S. 470, 475 (1998).  In such a case, where the "preemptive force" of federal law "is so powerful as to displace entirely any state cause of action" for the same claim, the state claim "necessarily 'arises under' federal law."  <u>Franchise Tax Bd.</u>, 463 U.S. at 23-24.  Defendant argues that this complete preemption exception applies here.

Courts are cautioned against finding complete  preemption too readily. <u>Railway Labor</u>, 858 F.2d at 940-41.  Complete preemption is an extraordinary doctrine "that converts an ordinary state common law complaint into one stating a federal claim."  <u>Metropolitan Life</u>, 481 U.S. at 65.  Recognizing the very narrow scope of the doctrine, the Third Circuit recently examined complete preemption under ERISA, and established a two-part test for determining whether a state court claim is completely preempted by ERISA, and thus removable to federal court.  <u>Pascack</u>, 388 F.3d at 396.  Under the test articulated in <u>Pascack</u>, "[t]his case is removable only if (1) the Hospital could have brought its breach of contract claim under [ERISA] § 502(a), and (2) no other legal duty supports the Hospital's claim."  <u>Id.</u> at 400.

**A.**

Section 502(a) of ERISA provides that "a participant or beneficiary" of an

"employee welfare benefit plan" may bring a civil action "to recover benefits due to him under the terms of his plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B).[6]  The Hospital, being neither a participant nor a beneficiary, does not have standing under ERISA to bring a claim in its own right.  The question presented in this case, however, is whether a valid assignment of a claim from a participant or beneficiary confers the necessary standing on the Hospital.

In Pascack, the Third Circuit explained that this was an open question in this Circuit.  Although the Court noted that "[a]lmost every circuit to have considered the question has held that a health care provider can assert a claim under § 502(a) where a beneficiary or participant has assigned to the provider that individual's right to benefits under the plan," Pascack, 388 F.3d at 401 n.7, it ultimately determined that it need not resolve the dispute to decide the case.  The Court held that the defendant-hospital had failed to demonstrate that it had received a valid assignment from a participant or beneficiary.  It therefore found that the first prong of the test was not met, and ordered that the case be remanded to state court, without deciding the "standing-by-assignment of claim" issue.  Id. at 400-02.

---

[6] Section 502(a) creates additional causes of action as well; however, none of them are relevant to this case.

Here, by contrast, the Hospital has met its burden of establishing the existence of a valid assignment.  For each of the claims at issue in this case, the Hospital submitted a completed UB-92 form to the Plan.  A UB-92 form is a uniform health insurance claim form issued by the National Uniform Billing Committee.  <u>See</u> National Uniform Billing Committee, <u>The History of the NUBC</u>, http://www.nubc. org/history.html (last visited Sept. 19, 2006) ("[T]he UB-92 is the 'de facto' institutional claim standard.").  The form includes a box wherein the provider indicates whether a valid assignment has been obtained.  The back of the form provides as follows:

> Certifications relevant to the Bill and Information Shown on the Face Hereof: Signatures on the face hereof incorporate the following certifications or verifications where pertinent to this Bill:
>
> 1. If third party benefits are indicated as being assigned or in participation status, on the face thereof, appropriate assignments by the insured/beneficiary and signature of patient or parent or legal guardian covering authorization to release information are on file. Determinations as to the release of medical and financial information should be guided by the particular terms of the release forms that were executed by the patient or the patient's legal representative. The hospital agrees to save harmless, indemnify and defend any insurer who makes payment in reliance upon this certification, from and against any claim to the insurance proceeds when in fact no valid assignment of benefits to the hospital was made.

<u>See</u> Eaton Dec. Exh. C (standard UB-92 form).  For each of the claims at issue here, a provider representative checked the relevant box and signed the completed form,

thus representing under penalty of fine or imprisonment that a valid assignment was obtained.  See Eaton Dec. Exh. D (UB-92 forms for Wassef, Paz, and Menyhart).

Nevertheless, the Court still does not have to decide whether "a health care provider can assert a claim under § 502(a) where a beneficiary or participant has assigned to the provider that individual's right to benefits under the plan," Pascack, 388 F.3d at 401 n.7, because the second requirement for removal is not met.  That is, there is another legal duty, independent of ERISA, that supports the Hospital's claim.

**B.**

The Hospital's legal claims in this case are effectively identical to the plaintiff-hospital's claims in Pascack, where the Third Circuit concluded that the Hospital's state law claims were predicated on a legal duty independent of ERISA.  The Court acknowledged that the Hospital's claims derived from an ERISA plan and existed "only because" of that plan.  Id. at 402 (quoting AETNA Health Inc. V. Davila, 542 U.S. 200, 213 (2004).  But the "crux" of the dispute, the Court noted, involved interpretation of § 2.1 of the Subscriber Agreement, governing payment for "Covered Services furnished to Eligible Persons."

> Were coverage and eligibility disputed in this case, interpretation of the Plan might form an "essential part" of the Hospital's claims.
> Coverage and eligibility, however, are not in dispute.  Instead, the resolution of this lawsuit requires interpretation of the Subscriber

Agreement, not the Plan. The Hospital's right to recovery, if it exists, depends entirely on the operation of third-party contracts executed by the Plan that are independent of the Plan itself.

Id.

The court found instructive the decision of the Court of Appeals for the Ninth Circuit in Blue Cross of California v. Anesthesia Care Associates Medical Group, Inc., 187 F.3d 1045 (9th Cir. 1999):

In [Anesthesia Care Associates], the court held that claims asserted by health care providers against a health care plan for breach of their provider agreements were not completely pre-empted under ERISA. The court reached this conclusion notwithstanding "the fact that these medical providers obtained assignments of benefits from beneficiaries of ERISA-covered health care plans."

The litigation in Anesthesia Care arose from a fee dispute between four health care providers and Blue Cross. Blue Cross had entered into "provider agreements" with physicians in which Blue Cross agreed to identify the providers in the information it distributed to beneficiaries of the plan and to direct beneficiaries to those providers. In return, the providers agreed to accept payment for services rendered to beneficiaries according to specified fee schedules. When Blue Cross attempted to change the fee schedules, the providers filed a class action in state court alleging a breach of the provider agreements. The Ninth Circuit held that "the Providers' claims, which arise from the terms of their provider agreements and could not be asserted by their patient-assignors, are not claims for benefits under the terms of ERISA plans, and hence do not fall within § 502(a)(1)(B)." The court explained:

The Providers are asserting contractual breaches . . . that their patient-assignors could not assert: the patients simply are not parties to the provider agreements between the Providers and

14

> Blue Cross. The dispute here is not over the right to payment, which might be said to depend on the patients' assignments to the Providers, but the amount, or level, of payment, which depends on the terms of the provider agreements.
>
> Because the Providers asserted "state law claims arising out of separate agreements for the provision of goods and services," the court found "no basis to conclude that the mere fact of assignment converts the Providers' claims into claims to recover benefits under the terms of an ERISA plan."

Id. at 403-04 (internal citations omitted).

The Third Circuit found important similarities between the facts in Pascack and those involved in Anesthesia Care Associates: "(1) the Hospital's claims in [Pascack] arise from the terms of a contract—the Subscriber Agreement—that is allegedly independent of the Plan; (2) the participants and beneficiaries of the Plan do not appear to be parties to the Subscriber Agreement; and (3) 'the dispute here is not over the right to payment, which might be said to depend on the patients' assignments to the [Hospital], but the *amount*, or level, of payment, which depends on the terms of the [Subscriber Agreement].'" Id. at 204 (quoting Anesthesia Care Associates Medical Group, Inc., 187 F.3d at 1051) (alterations and emphasis in original). Accordingly, the Court concluded that the second requirement for proper removal— lack of an independent legal duty—was not met.

Despite this conclusion, and the similarity of the claims raised in Pascack to the

claims raised in the instant case, the Plan contends that the Hospital's claims do *not* arise out of an independent legal duty.  Pascack's conclusion to the contrary, the Plan argues, is "mere *dicta.*"   Specifically, the Plan contends that once the Court determined that the plaintiff could not have brought its breach of contract claim under § 502(a) of ERISA, it was unnecessary to reach the second part of the test.

Although it may have been technically unnecessary for the Third Circuit to address the second prong, the fact remains that it did.  The Court of Appeals went to great lengths to thoroughly analyze, and ultimately decide whether an independent legal duty existed.  This being the case, the Third Circuit's opinion is highly persuasive authority.  Furthermore, this Court, if addressing the issue anew, would reach the same conclusion.

In short, the Court finds that the second requirement for removal on the basis of complete preemption is not satisfied in this case because Plaintiff's claims are predicated on a separate legal duty independent of ERISA.

## IV.    CONCLUSION

Defendant's position demonstrates the difference between the defense of ordinary preemption, and the doctrine of complete preemption.  "[T]he fact that a defendant might ultimately prove that a plaintiff's claims are pre-empted . . . does not establish that they are removable to federal court."  Caterpillar, 482 U.S. at 398;

Railway Labor, 858 F.2d at 941.  It is possible that following remand the state court may still conclude that the plaintiff's state law claims are preempted, but "[t]hat issue must be left for determination by the state court on remand," as this Court "need not and should not address the issue of whether the state substantive law relied upon by the plaintiff has been preempted by federal law."   Railway Labor, 858 F.2d at 942. For the present, Defendant has not demonstrated that ERISA completely preempts state law, and therefore has not satisfied its burden of establishing federal subject matter jurisdiction.  Accordingly, the case will be remanded to state court.[7]


\s\     John C. Lifland, U.S.D.J.


Dated: September 29, 2006

_____

[7] The Plaintiff's request for costs and expenses, however, will be denied.  28 U.S.C. § 1447 permits courts to award expenses, including attorneys fees, incurred as a result of an improper removal, but as even the Plaintiff admits, court are inclined to order attorney fees only "[w]here non-removability of the action should have been obvious."  See Plaintiff's Reply Memorandum at 13.  Federal jurisdiction was not so obviously lacking in this case as to render an award of fees appropriate.